**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**TERRY CUTRIGHT and JOHN WILSON**
**on behalf of themselves and others**
**similarly situated,**

> **Plaintiffs,**

**v.**                                        **Civil Action No.: 2:16-cv-06346**
                                              **Honorable Judge John T. Copenhaver, Jr.**

**MAYOR DANNY JONES, individually**
**and in his official capacity, THE CITY**
**OF CHARLESTON, and its division**
**THE CHARLESTON POLICE DEPARTMENT,**

> **Defendants.**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Plaintiffs file this Response in Opposition to the Motion to Dismiss, asserting a material factual dispute as to whether the Plaintiffs' encampment was on private property exclusively, and a substantial legal dispute as to whether, even if the Plaintiffs were partly or entirely camped on private property, they have a possessory interest in their personal property that is protected against unreasonable seizure under the Fourth Amendment to the U.S. Constitution and Article III, Sec. 6 of the West Virginia Constitution.

**I.    STATEMENT OF PERTINENT FACTS**

The following facts, as alleged in the Complaint, must be taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

**Placement on public property**

The Plaintiffs, and other putative class members, were part of an encampment that was partly located under the Spring Street Bridge in Charleston, West Virginia, which is a public

bridge on public property along a public waterway. (*See* Compl. ¶¶ 7, 39) (noting that Tent City was located on the banks of the Elk River and "[that Defendants sought to remove] the Tent City residents who were living under the Spring Street Bridge.").  The Affidavit of Plaintiff Wilson specifically noted that, during the raid on Tent City, the Police sought to remove the parts of Tent City where the Plaintiffs resided that were located under the Spring Street Bridge and by the public waterway known as the Elk River.  (*See* Compl. Ex. 2 ¶¶ 5, 15) ("Part of Tent City is located on the rocks under the Spring Street Bridge directly next to the footpath. . . [The police stated] that we were all evicted immediately, including the people under the bridge.").

**Mayor considered and adopted policy to seize property of the homeless before ordering Police and City of Charleston employees to implement that policy**

"No warning was given to the folks living at Tent City along the Elk River. [Mayor] Jones said that was so they didn't end up in court." (*See* Compl. ¶ 22).  The decision to provide no notice prior to the seizure was considered and adopted by Mayor Jones a week in advance of the Mayor's action to order the implementation of that policy by the Police Department and City of Charleston employees.  The City of Charleston and/or the Charleston Police Department had been previously confronted by the homeless residents of Tent City after reported and unreported seizures of property by the Police Department. (*See* Compl. ¶ 12).

Indeed, the City of Charleston and the Charleston Police Department have had prior interactions and discussions regarding the notice which is required in connection with the seizure of the property of the homeless.  In 2014, after reported and unreported incidents in which the Police Department had similarly seized the property of a homeless resident of Charleston, the undersigned counsel negotiated a reasonable agreement with the Police Department, pursuant to which the Department would provide notice in advance of seizing the property of the homeless again in the future.  *See* Ex. 1 (Milnes letter to Major Beckett).  Mayor Jones understood this

prior policy—or he at least understood the constitutional imperative to provide reasonable notice prior to seizing personal property in this fashion—because he acknowledged as much publicly in the immediate aftermath of the raid on Tent City.  (*See* Compl. ¶ 22) ('There was a lawyer from Mountain [State] Justice who got down there as we were doing it and [if the City had provided advance notice] he would've gone in court and tried to stop us and then we'd have to pay to fight it[.]" (quoting Mayor Jones)).

Thus, even though the Defendants understood the constitutional impropriety of seizing the property of Tent City residents without providing advance notice, the Mayor ordered, and the City of Charleston and the Police Department condoned, the ongoing implementation of the policy of unnoticed seizures as to the Plaintiffs and other putative class members.  (*See* Compl. ¶ 21) ("Defendant Jones stated in a news conference on January 19, 2016 that he had made the decision to order the destruction of Tent City the week before.").

## II.     LEGAL ARGUMENT

### A. Standard for Rule 12(b)(6) Motion to Dismiss.

Defendants move to dismiss all counts of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiffs have not met the pleading standard established by Rule 8 of the Federal Rules.

Rule 8 requires simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss pursuant to Rule 8, it is a basic tenet that a court must accept all of the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The claim stated in a complaint must be "plausible on its face." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to

a 'probability requirement,'" and "does not require 'detailed factual allegations.'" *Id*.  Indeed,

"[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. In conducting

its analysis, the court must "draw all reasonable inferences in favor of the plaintiff." *Nemet*

*Chevrolet*, 591 F.3d at 253.

"Moreover, when, as here, a defendant seeks dismissal of a civil rights complaint, 'we

must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it

appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory*

*which might plausibly be suggested by the facts alleged*.'" *Presley v. City Of Charlottesville*, 464

F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th

Cir. 1999) (emphasis in original) (internal quotation marks omitted).

Plaintiffs' Complaint provides a factual basis for the alleged claims that meets and

exceeds the minimum requirements of the Federal Rules under these standards.  As a result, none

of the counts of the Complaint should be dismissed.

**B.**    **Plaintiffs have plead sufficient facts to support their dispute regarding the unreasonable seizure of their property and the attendant incursion on their rights to procedural and substantive due process.**

**1. Plaintiffs' unreasonable seizure claims should not be dismissed because there is a factual dispute as to whether the Plaintiffs' encampment was located on private property.**

As noted above, the Plaintiffs assert that they were evicted from a space, known as Tent

City, that is located partly on public property underneath the Spring Street Bridge and along a

public waterway. (*See e.g.* Compl. ¶¶ 7, 39).  Discovery is necessary in order to ascertain where

the public property ended and where, if at all, there existed any private property pertinent to the

Complaint.  While Plaintiffs disagree with Defendants on whether the public or private nature of

the pertinent property makes a difference in Plaintiffs' claims relating to the seizure of their personal property, at the very least, discovery is necessary to determine the scope of the private property at issue in this case.  Dismissal on this basis is accordingly improper.

### 2. Defendants' actions meaningfully interfered with the Plaintiffs' possessory interest in their personal property, and for that reason the Plaintiffs' unreasonable seizure claims should not be dismissed.

The Plaintiffs had a possessory interest in their personal property, and the Defendants meaningfully interfered with that possessory interest when they destroyed that property without any reasonable notice. *See generally Lavan v. City of Los Angeles*, 693 F.3d 1022, 10584 (9th Cir. 2012). The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  The destruction of property constitutes a meaningful interference with an individual's interest in continuing to possess the destroyed property.  That is because the property is not capable of being possessed at all once it has been destroyed.  Here, the Defendants totally destroyed the Plaintiffs' property and thus meaningfully interfered with their possessory interest in that property. (*See* Compl. ¶¶ 15-16).

Appellees need not show a reasonable expectation of privacy to enjoy the protection of the Fourth Amendment against *seizures* of their unabandoned property. *See e.g.  Soldal v. Cook County*, 506 U.S. 56, 63-64 & n. 8, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). "'[T]he Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized.'" *Altman v. City of High Point, N.C.*, 330 F.3d

194, 202 (4th Cir. 2003) (finding that privately owned dogs were "effects" subject to the protections of the Fourth Amendment) (quoting *United States v. Place*, 462 U.S. 696, 701, 103 S. Ct. 2637 (1983); *cf. Miranda v. City of Cornelius*, 429 F.3d 858, 862 n. 2 (9th Cir. 2005) (plaintiffs admitted that they had no reasonable expectation of privacy in their parked car, but nevertheless challenged the city's impoundment of the vehicle as an unreasonable seizure). The Fourth Circuit's finding that the seizure of a privately-owned dog was subject to the protections of the Fourth Amendment clearly establishes that the worldly possessions of homeless citizens are subject to those same protections.

A seizure is subject to the Fourth Amendment's reasonableness standard because "[t]he Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy." *Miranda*, 429 F.3d at 862 (citing *Soldal*); *accord United States v. Paige*, 136 F.3d 1012, 1021 (5th Cir.1998) ("The Supreme Court recently made clear that the protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even if his expectation of privacy in that property has been completely extinguished.") (citing *Soldal*); *Lenz v. Winburn*, 51 F.3d 1540, 1550 n. 10 (11th Cir.1995) ("It is true that a possessory interest is all that is needed for the Fourth Amendment's reasonableness requirement to apply to a seizure.") (citing *Soldal*); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir.1994) ("[O]ur finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our conclusion that Bonds has standing to challenge the seizure of her property.").

### Plaintiffs have a reasonable expectation of privacy in unabandoned shelters and effects

Notwithstanding the foregoing, the Plaintiffs do have a reasonable expectation of privacy in their unabandoned shelters and effects. When determining whether an expectation of privacy

is reasonable, "we must keep in mind that the test of legitimacy is . . . whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *California v. Ciraolo*, 476 U.S. 207, 212 (1986) (quotation omitted).  In *Silverman v. United States*, the Court explained the "very core" of the Fourth Amendment:

> A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizable hunk of liberty—worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle.

365 U.S. 505, 511 n.4 (1961) (quoting *United States v. On Lee*, 193 F.2d 306, 315-16 (2d Cir. 1951) (Frank, J., dissenting)). *Cf. State v. Mooney*, 588 A.2d 145, 161 (Conn. 1991) ("The interior of [the homeless defendant's duffel bag and cardboard box] represented, in effect, the defendant's last shred of privacy from the prying eyes of outsiders, including the police. Our notions of custom and civility, and our code of values, would include some measure of respect for that shred of privacy, and would recognize its assertion as reasonable under the circumstances of this case.").

   As set forth above, even if Plaintiffs' property were stored on real property owned by a private landowner who had not given permission to occupy the land, Plaintiffs would still have a reasonable expectation of privacy in the stored property.  As a factual matter, the pertinent private property owner in this instance had acquiesced to the Plaintiffs' presence at the curtilage of its property over many years.  Thus, even under the case law asserted by the Defendants, the Plaintiffs here did have a subjective expectation of privacy that society is prepared to recognize as reasonable. *See D'Aguanno v Gallagher*, 50 F.3d 877 (11th Cir. 1995). The Defendants assert in conclusory fashion that the Plaintiffs cannot demonstrate a violation of their procedural or substantive due process rights, and, as such, those claims should be dismissed as a matter of law.

However, as set forth herein, the Plaintiffs have asserted substantial legal authority to support the due process rights that they assert. Accordingly, dismissal at this stage is improper.

**3. Plaintiffs' claims should not be dismissed because they have plead sufficient facts to demonstrate that Defendants acted culpably by acting egregiously and adopting a policy that deprived them of their constitutional rights under the federal and state constitutions.**

Mayor Jones' considered decision to provide no notice prior to ordering and personally supervising the City of Charleston and Charleston Police Department in the removal and destruction of homeless Plaintiffs' property constitutes a policy under 42 U.S.C. Sec. 1983 in light of the City's prior incidents of seizures of property of the homeless, which the Police Department had sought to quell before Mayor Jones knowingly ordered the ongoing implementation of that policy. *See generally Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (explaining that a "single decision" by an authorized policymaker may represent "an act of official government policy."); *cf. Advanced Technology Bldg. Solutions, L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 166 (5th Cir. 2016) (applying *Pembauer* and *Monell*, explaining that "the critical question is to decide who is the final policymaker, which is an issue of state law." (internal citations omitted)). When a mayor, pursuant to the authority of his office, violates a citizen's constitutional rights, a municipality is liable for damages under Sec. 1983; furthermore, a city's liability is not contingent upon repeated constitutional violations by such a mayor. *Hollins v. Powell*, 773 F.2d 191, 195 (8th Cir. 1985) (City of Wellston, Missouri was liable for its mayor's unconstitutional action where he acted unconstitutionally in a single instance by directing the resources and employees who were at his command pursuant to his authority as Mayor); *cf. Gorman v. Bail*, 947 F.Supp.2d 509 (E.D. Pa. 2013).

As the seniormost official in the City of Charleston, Mayor Jones was by his own account

able to order and carry out the implementation of the raid on Tent City without providing notice

to the Plaintiffs.  (*See* Compl. ¶¶ 15-17, 20-23); *cf. Koziol v. Hanna*, 107 F.Supp.2d 170

(N.D.N.Y. 2000) (mayor of city, as highest elected official of city, qualified as "policy making

authority," for purposes of imposing liability on city for mayor's actions under § 1983).  The

Municipal Code of Charleston West Virginia provides that the Mayor is the head of city

government and the chief executive officer having general supervision over all executive

departments, offices, and agencies of the City. *See* Municipal Code of Charleston, Art. III, Sec. 2-

31 ("The mayor shall be the head of the city government and the chief executive officer of the

city. It shall be his duty to see that all of the laws and ordinances of the city are enforced; and he

shall have general supervision over all executive departments, offices and agencies of the city

government.").  Even if Mayor Jones' conduct regarding the January 2016 raid on Tent City were

to be viewed as an isolated incident, nonetheless that single or isolated decision by the Mayor is

sufficient to support a Sec. 1983 municipal liability claim because, as noted repeatedly

throughout the Complaint, it was Mayor Jones' decision alone that, pursuant to the laws and

customs of the City of Charleston, was necessary in order to compel the employees of the City of

Charleston and the Charleston Police Department—and that in fact did on its own compel those

employees—to conduct the raid on Tent City and to destroy the Plaintiffs' property without

providing advance notice. *Cf. Gillespie v. City of Battle Creek*, 100 F.Supp.3d 623 (W.D. Mich.

2015) ("Whether final authority to make municipal policy is vested in a particular official is a

matter of state law. 'This includes 'state and local positive law,' such as statutes, ordinances, and

regulations, and less formal sources of law such as local practice and custom.' In addition,

'[o]fficials can derive their authority to make final policy from customs or legislative enactments,

or such authority can be delegated to them by other officials who have final policymaking

authority.'") (applying *Pembauer* and quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 655

(6th Cir.1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988)

(plurality opinion))).  Accordingly, Mayor Jones was a final decisionmaker and applied a policy

for purposes of liability under Sec. 1983 when he ordered the Tent City raid in January 2016.

Separately, the Defendants adopted the policy of seizing the property of the homeless by a

secondary means of ratification or "condonation." *Owens v. Baltimore City State's Attorneys*

*Office*, 767 F.3d 379, 402 (4th Cir. 2014), cert. denied sub nom. *Baltimore City Police Dep't v.*

*Owens*, 135 S. Ct. 1893  (2015) (quoting  *Spell v. McDaniel*, 824 F.2d 1380, 1389-90 (4th

Cir.1987) (applying *Monell*)) (finding condonation where decisionmaker failed "to put a stop to

or correct a widespread pattern of unconstitutional conduct."); *cf. Schneider v. City of Grand*

*Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013). To demonstrate a policy by condonation, a

plaintiff may also cite a "persistent and widespread practice[ ] of municipal officials," the

"duration and frequency" of which indicate that policymakers (1) had actual or constructive

knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference." *Spell*,

824 F.2d at 1386–91. "Both knowledge and indifference can be inferred from the 'extent' of

employees' misconduct." *Owens*, 767 F.3d at 402–03 (quoting *Spell*, 824 F.2d at 1391).

Here, the Defendants' unnoticed seizures of the property of Tent City residents, and

threats by the Police to seize property of Tent City residents, occurred in various reported and

unreported events spanning several years.  For instance, during an August 2014 incident in which

the residents of Tent City were subject to seizure of their property without notice, the Tent City

residents secured legal counsel to intervene on their behalf with the Police.  (*See* Compl. ¶ 12).

Tent City was the predominant homeless encampment in the city of Charleston during all

times relevant to the Complaint.  Therefore, the multiple reported and unreported seizures of

personal property at Tent City during several years constitute a persistent and widespread practice by municipal officials as to this principal encampment that was home to a substantial portion of the homeless community in a city the size of Charleston.  While discovery may be necessary to determine more precisely the frequency with which the policy was applied, Plaintiffs have plainly pled sufficient facts to support a claim on the basis of the Defendants' policy of unnoticed seizures of personal property of the homeless.

Likewise, Plaintiffs have similarly pled that Mayor Jones (1) knew that the constitutionality of  prior seizures had been questioned by the residents of Tent City and their counsel, but (2) nonetheless overrode the Police Department and deliberately enforced a massive raid that (3) caused the total destruction of a substantial amount of personal property.  If proven, these facts are sufficient to constitute deliberate indifference on the part of the Mayor, because they demonstrates an "extent" of misconduct that is extreme and that deliberately ratifies the recurrence of unconstitutional conduct.  Consequently, dismissal of this claim is inappropriate at this stage.

### The Plaintiffs' worldly possessions and shelters constitute property for purposes of invoking the minimum protections of Constitutional due process

The Defendants argue that the Plaintiffs' personal possessions, which for many Plaintiffs constituted everything they owned, do not constitute "property" for purposes of due process analysis.  In order to determine whether Plaintiffs had a protected property interest in the continued ownership of their unattended possessions, a court may look to "existing rules or understandings that stem from an independent source such as state law-rules or understandings." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701 (1972). While "[t]he Court has... made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money," this case concerns only the core property

interest that derives from actual ownership of chattels. *Id*. at 571-572, 92 S. Ct. 2701. West Virginia Constitution recognizes the right of ownership of personal property.  W. Va. Const, Art. III, Sec. 1 ("All men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely:  The enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety."). It is undisputed that Plaintiffs owned their possessions and had not abandoned them. Therefore, the Plaintiffs maintained a protected interest in their personal property for purposes of due process.

Because homeless persons' unabandoned possessions are "property" within the meaning of the Fourteenth Amendment, the City had to comport with the requirements of the Fourteenth Amendment's due process clause if it wished to take and destroy them. *See United States v. James Daniel Good Real Prop*., 510 U.S. 43, 48, 114 S. Ct. 492 (1993) ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property."). The Plaintiffs received no prior notice sufficient to create an opportunity to be heard prior to the Government's destruction of their property.  At most, it appears that the Plaintiffs received a few scarce hours of notice—and perhaps as little as five minutes' notice as noted by Plaintiff Terry Cutright. (*See* Compl. ¶ 54). In either event, the Plaintiffs were not provided with notice and an opportunity to be heard regarding the deprivation of their property, in violation of the dictates of due process under Article III, Secs. 10 and 17 of the West Virginia Constitution and under the Fourteenth Amendment to the United States Constitution.

**4. Defendant Jones is not entitled to qualified immunity for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution Under the Circumstances Alleged in the Complaint.**

A governmental official can be sued under section 1983 in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985). In an official-capacity suit, however, "[m]ore is required": the suit is "treated as a suit against the entity," which must then be a " 'moving force' behind the deprivation," *id.* (third quotation quoting *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981)); thus, the entity's " 'policy or custom' must have played a part in the violation of federal law," *id*. (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978)).

Here, the Defendant Mayor Danny Jones is sued in both his individual and official capacities.  Jones acted in his individual capacity under color of state law because he took it upon himself to order, and personally to supervise, the Police Department and the City of Charleston as they carried out the seizure and destruction of the Plaintiffs' property on January 19, 2016, portraying an exertion of his authority as Mayor of the City of Charleston.  (*See* Compl. ¶¶ 15-16). When the Mayor brought numerous city staff people to the Spring Street Bridge, and stood with them peering over the bridge while the Police Department and City employees hauled away the Plaintiffs' personal belongings, the Mayor acted in his individual capacity, did so knowing---and publicly stating---that he was depriving the Plaintiffs of their rights to due process, and did so under the color of law by ordering his subordinates within the City and the Police Department to carry out the known unconstitutional actions.

Jones' intentional, knowing, and willful action of violating the Plaintiffs' constitutional rights precludes him from establishing his proffered defense of "qualified immunity," which is a

defense to the charge of individual liability under Sec. 1983. The Plaintiffs may defeat the defense of qualified immunity by demonstrating: (1) that the action in question violated a constitutional right, and (2) that the action violated clearly established law. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011); *cf. Bird v. West Valley City*, 832 F.3d 1188 (10th Cir. 2016) (where it is demonstrated that the municipality's authorized decisionmaker has *intentionally* deprived a plaintiff of a federally protected right, that conduct necessarily establishes that the municipality acted culpably, thus permitting imposition of municipal liability under Sec. 1983). Mayor Jones' statements in the immediate aftermath of the January 19, 2016, raid on Tent City plainly convey his understanding of the clearly established law regarding constitutional seizures of property of the homeless. (*See* Compl. ¶¶ 15-17, 20-23). He acknowledged that, had the City provided advanced notice, the Plaintiffs would have had the opportunity to avail themselves of their constitutional rights to due process, which is precisely the activity that Mayor Jones sought to deny to the Plaintiffs. (*See* Compl. ¶ 22).

**5. Defendant Mayor Danny Jones is not entitled to qualified immunity under West Virginia law for alleged violations of the West Virginia Constitution under the circumstances alleged in the Complaint.**

Similarly under the Constitution of the State of West Virginia, the Defendants urge that "the question to determine entitlement to qualified immunity" centers on "whether an objectively reasonable official, situated similarly to the defendant, could have believed that his conduct did not violate the plaintiff's constitutional rights, in light of clearly established law and the information possessed by the defendant at the time of the allegedly wrongful conduct[.]" *City of St. Albans v. Botkins*, 719 S.E.2d 863, 868-869, 228 W. Va. 393, 398-399 (2011), quoting *Hutchison v. City of Huntington*, 198 W. Va. 139, 149, 479 S.E.2d 649, 659 (1996). Here, there is no question whether the an objectively reasonable official—or even Mayor Jones

himself—could have believed that the disputed conduct did not violate the Plaintiffs' constitutional rights in light of clearly established law and the currently-available information because the Defendant Mayor Jones did in fact acknowledge on January 19 that he understood that the Plaintiffs would have successfully availed themselves of their due process rights to a pre-deprivation proceeding if the Defendants had provided any meaningful notice in advance of the seizure and raid of Tent City.

In order to overcome qualified immunity under the West Virginia Constitution, similar to the federal Constitution, it must be established that the agency employee or official knowingly violated a clearly established law, or acted maliciously, fraudulently, or oppressively. Syl. pt. 8, *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W. Va. 161, 483 S.E.2d 507 (1996); Syl. pt. 11, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). By knowingly and intentionally depriving the Plaintiffs of the minimum requirements of procedural due process prior to destroying their property, Defendant Jones did violate law that, in his own eyes, was clearly enough established as to expect that it would apply to the Plaintiffs had they received adequate notice of the Defendants' intent to deprive them of their property. This action was oppressive and malicious because it was taken with such blatant calculation to undercut the Plaintiffs' rights under the state and federal constitutions. Mayor Jones, therefore is not entitled to qualified immunity under either state or federal law, and the Defendants' motion must be denied in this regard as well.

III.     CONCLUSION

For the foregoing reasons, the Plaintiffs humbly request that the Court deny the Motion to Dismiss as to all counts.

**TERRY CUTRIGHT and JOHN WILSON,**

**By counsel,**

   /s/ Samuel B. Petsonk
Samuel B. Petsonk (WV Bar No. 12418)
Gary M. Smith (WV Bar No. 12602)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
E-mail: sam@msjlaw.org
        gary@msjlaw.org
Office: (304) 344-3144
Fax: (304) 344-3145

Lydia C. Milnes (WV Bar No. 10598)
Mountain State Justice, Inc.
215 S. Third St., Ste. 901
Clarksburg, West Virginia 26301
Telephone:  (304) 326-0188
Facsimile:  (304) 326-0189
Email:  lydia@msjlaw.org